**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER M. KIRCHNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 09 C 7478** |
| | ) | |
| **SUNBELT RENTALS, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Christopher Kirchner has sued his former employer, Sunbelt Rentals, Inc.,
alleging that he was terminated in retaliation for exercising his rights under the Illinois
Worker's Compensation Act (IWCA) and asserting claims under the Family Medical
Leave Act (FMLA). Sunbelt has moved for summary judgment. For the reasons below,
the Court denies the motion in part and grants it in part.

**Background**

The Court takes the following facts from the allegations in Kirchner's amended
complaint and the parties' submissions on the summary judgment motion.

Kirchner began working for Sunbelt in November 2005 as a yardman at its
Countryside store and, soon thereafter, became a member of the Local 150 union. In
August 2006, Sunbelt promoted Kirchner to a rollback truck driver. In this position,
Kirchner's primary responsibility was to deliver and remove construction-related
equipment.

On November 12, 2007, Sunbelt called Kirchner in after normal work hours to deliver a piece of equipment to a customer. Kirchner injured his right ankle while loading the equipment onto his truck. Kirchner's manager, Patrick Vande Linde, and another employee, Robert D. Johandes, saw Kirchner fall. Kirchner wrapped his ankle with an Ace bandage and applied ice. Vande Linde and Johandes finished loading Kirchner's truck while he sat on the pavement. Kirchner then delivered the equipment, returned the truck to the Countryside store, and drove home in his personal vehicle. According to Kirchner, he struggled to complete the job because he found it difficult to put weight on his ankle.

Vande Linde later completed a computer-generated employee accident report form in which he described the accident as follows:

> Chris was unable to load a 40' Elec. Art. M/L b/c of a slippery surface on the deck of the rollback. When exiting the basket of the machine his right foot slipped on the wet pavement. The majority of his weight was on his right foot which exacerbated the ankle injury.

Pl.'s LR 56.1 Stat., Ex. 3 at 19.

That night, Kirchner's wife drove Kirchner to the Ingalls medical care facility. A doctor examined Kirchner, ordered x-rays of his ankle, and issued a work status discharge sheet for Kirchner's employer. The discharge sheet characterized Kirchner's injury as an "ankle sprain" and stated that the x-ray was negative. It prescribed the use of crutches, an Ace bandage with ice, and ibuprofen. It also requested that Kirchner stay off of his right leg and return for a reevaluation on November 15.

On the morning of November 13, Kirchner's wife drove Kirchner to the Countryside store to speak with Vande Linde. Kirchner, who was on crutches, provided

Vande Linde with a copy of the discharge sheet from the doctor. Vande Linde advised Kirchner that he planned to attend a mangers' meeting in Indiana for two days. The parties dispute Vande Linde's subsequent instructions to Kirchner. According to Kirchner, Vande Linde agreed to let Kirchner stay home through his reevaluation on November 15. Vande Linde counters that he allowed Kirchner to go home that day but told Kirchner to report for light duty on November 14.

Kirchner did not go to work on November 14 or 15. On November 15, he returned to the Ingalls medical center for reevaluation. Kirchner received a second work status discharge sheet instructing him not to use his right leg and to elevate his foot.

During Vande Linde's absence, Sunbelt customer service representatives Roger Ruiz and Christine Harej managed the Countryside store. Vande Linde returned to the store on the morning of November 16 and learned that Kirchner was not at work. Prior to November 12, Vande Linde has testified, Kirchner had never failed to show up at work. Vande Linde advised the union steward to inform Kirchner to contact Vande Linde immediately. Kirchner then called Vande Linde.

The parties dispute the circumstances of Kirchner's subsequent termination. Kirchner's version of events is as follows. Vande Linde notified Kirchner of his termination during the November 16 telephone conversation and requested that he return his uniform. Kirchner's wife drove Kirchner to the Countryside store. While at the store, he met with Vande Linde, who instructed him to sign a termination notice. Kirchner told Vande Linde, "I thought this was a workmen's comp, and [Vande Linde] said no, it's not a workmen's comp case." Kirchner Dep. 94.

According to Sunbelt, Kirchner had failed to return phone calls from Ruiz and Harej on November 14 and 15 inquiring why he had not reported to work. Ruiz and Harej reported the absences to Vande Linde, who consulted with his supervisor, John Vedok, on the proper response. After speaking with Vedok, Vande Linde decided to issue Kirchner a disciplinary warning. When he questioned Kirchner about his conduct over the phone on November 16, however, Kirchner responded in an insubordinate and belligerent tone. At that point, Vande Linde decided to terminate Kirchner and told him to bring his uniform to the store. Vande Linde then prepared a termination notice. When Kirchner and his wife arrived at the store, they began yelling obscenities and arguing with Vande Linde. Vande Linde instructed Kirchner to sign the termination notice. He denies discussing workers' compensation with Kirchner.

The termination notice stated:

> Chris was instructed to return to work on Wednesday November 14 to light duty b/c of an injury to his ankle that was suffered on 11/12/07. Chris failed to show for work on 11/14 & did not return any calls. Chris repeated th[is] action on 11/15 as well. This constitutes job abandonment. . . . 3 day no show.

Pl.'s LR 56.1 Stat., Ex. 1 at 23. The notice made no mention of Kirchner's alleged insubordination over the telephone.

Kirchner received treatment for his ankle injury at multiple doctor's visits. On November 30, 2007, he learned that he had microfractures and torn ligaments in his ankle. In December 2007, he underwent surgery on his ankle. Between November 20 and November 29, Kirchner's doctor authorized him to work light duty. From November 30, 2007 to April 9, 2008, he was not authorized to work at all. Beginning on April 10, 2008, Kirchner was authorized to work light duty. On June 4, 2008, Kirchner received

authorization to resume full duty.

On November 18, 2007, Kirchner filed a claim for workers' compensation benefits with the Illinois Workers' Compensation Commission. He settled the claim in April 2009, receiving temporary total disability benefits from Sunbelt for the period of November 30, 2007 to April 10, 2008.

Kirchner has asserted a retaliatory discharge claim under Illinois law and claims under the FMLA. Sunbelt has moved for summary judgment.

## Discussion

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the Court draws reasonable inferences in favor of the non-moving party. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court's "function is not to weigh the evidence but merely to determine if there is a genuine issue for trial." *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

## I.     Retaliatory discharge claim

Under Illinois law, "[i]n general, an employer may terminate an at-will employee for any reason or even for no reason at all." *Sweat v. Peabody Coal Co.*, 94 F.3d 301,

305 (7th Cir. 1996) (citations omitted). "The Illinois courts, however, have recognized the tort of retaliatory discharge as an exception to this general rule where an employee is terminated for exercising his rights under the Illinois Workers' Compensation Act." *Id.* (citations omitted). To prevail on such a claim, "'a plaintiff must show (1) that he was the defendant's employee before his injury; (2) that he exercised a right granted by the Workers' Compensation Act; (3) and that he was discharged from his employment with a causal connection to his filing a workers' compensation claim.'" *McCoy v. Maytag Corp.*, 495 F.3d 515, 520-21 (7th Cir. 2007) (quoting *Carter v. Tennant Co.*, 383 F.3d 673, 677 (7th Cir. 2004)). The parties disagree over whether Kirchner satisfies the second and third elements of the tort.

Sunbelt first argues that Kirchner did not exercise a right granted by the IWCA because he did not file a workers' compensation claim prior to his termination. The Court disagrees. In *Hinthorn v. Roland's of Bloomington, Inc.*, 119 Ill. 2d 526, 519 N.E.2d 909 (1988)), the Illinois Supreme Court held that a plaintiff could bring a retaliatory discharge claim when discharged "in retaliation for orally requesting medical attention, instead of [for] filing a formal compensation claim." *Id.* at 534, 519 N.E.2d at 913 (reasoning that, "[i]t would be anomalous to allow a retaliatory discharge action to employees who were fired after filing a workers' compensation claim . . . but not those who are injured and fired before they ever get the chance to file such claims"). This rule applies even if an employee waits until years after the termination to file a workers' compensation claim. *See Gacek v. American Airlines, Inc.*, 614 F.3d 298, 299 (7th Cir. 2010) (citing *Hinthorn*, 119 Ill. 2d at 534, 519 N.E.2d at 913).

6

Sunbelt next argues that Kirchner has failed to show a genuine issue of material fact regarding the causation element of the tort. Under Illinois law, "'[t]he element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee.'" *McCoy*, 495 F.3d at 521 (quoting *Carter*, 383 F.3d at 677). The Seventh Circuit has not yet decided "whether, under the *Erie* doctrine, a federal court exercising diversity jurisdiction to hear a retaliatory discharge claim under the Illinois Workers' Compensation Act must apply the Illinois framework, or whether it may use the familiar burden-shifting method first presented in *McDonnell Douglas Corp. v. Green*." *McCoy*, 495 F.3d at 521 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see also Carter*, 383 F.3d at 677-79. Under either standard, however, an employee's claim fails if the employer articulates a legitimate, nondiscriminatory reason for the termination and the employee fails to provide evidence that the proffered reason is pretextual. *McCoy*, 495 F.3d at 522; *Carter*, 383 F.3d at 678. "To show pretext a plaintiff must offer evidence to indicate that the employer did not honestly believe the reasons it gave for its action and is simply lying to cover its tracks." *McCoy*, 495 F.3d at 522-23 (citation and internal punctuation marks omitted).

When reasonable inferences are drawn in his favor, Kirchner satisfies this standard. Vande Linde maintains that he terminated Kirchner for violation of Sunbelt's no-show, no-call policy and Kirchner's use of a belligerent tone during their November 16 phone conversation. In response, Kirchner offers evidence that Vande Linde witnessed Kirchner's accident on November 12; saw Kirchner using crutches when Kirchner came in on November 13 to request leave; read the discharge sheet stating

that Kirchner could not use his right leg; granted the requested leave; and then terminated Kirchner just three days after the injury. Second, Kirchner presents evidence that he had no history of failing to show up for work and that Vande Linde did not terminate similarly situated employees with attendance problems. Third, Kirchner presents evidence that his termination notice did not mention insubordination, calling into doubt Vande Linde's explanation regarding the reason for and timing of the termination decision. Fourth, Kirchner presents evidence that Vande Linde expressly told him that his case did not merit worker's compensation. Taken together, this evidence creates a genuine issue for trial regarding the causation element of Kirchner's retaliatory discharge claim.

Finally, Sunbelt contends that Kirchner is not entitled to punitive damages on his retaliatory discharge claim. "Illinois law . . . draws a clear distinction between the showing needed for liability and the higher level of culpability needed to sustain an award of punitive damages in retaliatory discharge cases." *Hiatt v. Rockwell Int'l Corp.*, 26 F.3d 761, 766 (7th Cir. 1994). To recover punitive damages, a plaintiff must present evidence that "the underlying conduct . . . involve[d] an element of outrage similar to that found in crime." *F:A J Kikson v. Underwriters Laboratories, Inc.*, 492 F.3d 794, 801 n.2 (7th Cir. 2007) (citing *Homewood Fishing Club v. Archer Daniels Midland Co.*, 239 Ill. App. 3d 102, 605 N.E.2d 1140, 1148 (1992)); *see also Hiatt*, 26 F.3d at 766 (requiring a showing that the defendant committed the underlying tort with "fraud, actual malice, deliberate violence or oppression, willfulness, or gross negligence").

Kirchner has shown a genuine fact question on his eligibility for punitive damages, though perhaps just barely. The timing of his termination, coupled with the

8

other evidence described above, supports a finding of a higher level of culpability.

Sunbelt is not entitled to summary judgment on Kirchner's claim for punitive damages.

## *2.* **FMLA claims**

"The FMLA entitles any eligible employee suffering from a serious health condition that renders him unable to perform the functions of his position to twelve workweeks of leave during each twelve-month period." *Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006) (citing 29 U.S.C. § 2612(a)(D)). "The FMLA makes it unlawful for an employer to interfere with an employee's attempt to exercise any FMLA rights." *Id.* (citing 29 U.S.C. § 2615(a)(1)). The FMLA "also forbids an employer from retaliating against an employee who exercises FMLA rights." *Id.* (citing 29 U.S.C. §§ 2615(a)(2), (b)).

Sunbelt seeks summary judgment on Kirchner's FMLA interference and retaliation claims on various grounds. Sunbelt also contends that Kirchner is not entitled to damages for pain and suffering, reinstatement, or damages for lost compensation on his FMLA claims. The Court addresses each argument in turn.

### a. **FMLA interference claim**

To prevail on an FMLA interference claim, an employee must establish that: (1) he was eligible for the FMLA's protections; (2) his employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him FMLA benefits to which he was entitled. *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 761 (7th Cir. 2008) (citing *Burnett*, 472 F.3d at 477)). An employee is entitled to leave under the FMLA if he is

afflicted with a serious health condition and that condition renders him unable to perform the functions of his job.  *Burnett*, 472 F.3d at 477-78 (citing 29 U.S.C. § 2612(a)(1)(D)).

Sunbelt first argues that Kirchner failed to give Sunbelt sufficient notice of his intent to take FMLA leave.  In *Burnett*, the Seventh Circuit explained that "[t]he notice requirements of the FMLA are not onerous":

> An employee need not expressly mention the FMLA in his leave request or otherwise invoke any of its provisions.  Indeed, the employee can be completely ignorant of the benefits conferred by the Act.  The employee's notice obligation is satisfied so long as he provides information sufficient to show that he likely has an FMLA-qualifying condition.

*Burnett*, 472 F.3d at 478-79 (citations omitted); *see also Aubuchon v. Knauf Fiberglass, GmbH*, 359 F.3d 950, 953 (7th Cir. 2004) ("[T]he employee's duty is merely to place the employer on notice of a probable basis for FMLA leave.").  "[A]n employee may be excused from expressing a need for medical leave . . . when circumstances provide the employer with sufficient notice of the need for medical leave."  *Burnett*, 472 F.3d at 479 (citing *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381-82 (7th Cir. 2003)).  For example, "[s]ome observable changes in an employee's condition (such as a broken arm) present an obvious need for medical leave, thereby obviating the need for an express request for medical leave."  *Burnett*, 472 F.3d at 479 (citing *Byrne*, 328 F.3d at 382).  "[A]dequacy of notice is a fact-rich question . . . best resolved by the trier of fact" if "the employer and employee dispute the quantity and nature of communications regarding the employee's illness."   *Burnett*, 472 F.3d at 479 n.4.

There is a genuine factual dispute regarding this element of Kirchner's FMLA

interference claim.  Kirchner presents evidence that he expressly requested medical leave from Vande Linde on November 13, 2007.  He also presents evidence that Vande Linde witnessed his injury; saw him using crutches the following morning; and read the November 12 discharge sheet from his doctor, which indicated that he could not use his right leg and instructed him to appear for a reevaluation appointment.  A reasonable jury could find that Kirchner provided Sunbelt with sufficient notice of the need for medical leave, either expressly or through the circumstances of his injury.

Sunbelt next argues that Kirchner did not establish an FMLA-qualifying "serious health condition."  "An employee has a 'serious health condition' within the meaning of the FMLA, where he has 'an illness, injury, impairment, or physical or mental condition that involves – (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."  *Burnett*, 472 F.3d at 478 (quoting 29 U.S.C. § 2611(11)).  At the time of Kirchner's injury, the accompanying FMLA regulations provided, in turn, that:

> [a] serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
>
> (i) A period of incapacity (i.e., inability to work . . . ) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
> (A) Treatment two or more times by a health care provider . . . ; or
> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114(a)(2) (2007).

There is a genuine factual dispute regarding this element of Kirchner's FMLA interference claim.  He presents evidence that, at the time of his leave request, he was

unable to work for more than three consecutive calendar days due to an ankle injury that ultimately required surgery.  He also presents evidence that he received treatment for his injury two or more times by a health care provider.

Contrary to Sunbelt's argument, the reasoning in *Phillips v. Quebecor World RAI, Inc.*, No. 04 C 330, 2005 WL 6126702 (E.D. Wis. Aug. 16, 2005), does not compel a different result.  In *Phillips*, the court considered whether a plaintiff diagnosed with a tumor six months after requesting FMLA leave had presented sufficient evidence of a serious health condition to survive summary judgment.  *Id.* at *6-8.  The court concluded that she had not, reasoning that the employee's "condition must be 'serious' at the time when leave is taken or requested, and not at some future date."  *Id.* at *6.  In this case, in contrast, Kirchner has presented evidence from which a reasonable jury could conclude that his condition was serious at the time of his leave request.  The Court therefore declines to grant summary judgment on Kirchner's FMLA interference claim.

**b.    FMLA retaliation claim**

As a preliminary matter, Sunbelt contends that Kirchner's amended complaint does not assert an FMLA retaliation claim.  Instead, Sunbelt argues that Kirchner improperly alleges an FMLA retaliation claim "for the first time" in his memorandum in response to the motion for summary judgment.  Def.'s Reply Br. in Support of Mot. for Summ. J. 9.  The Court disagrees.  Kirchner's amended complaint states that Sunbelt "unreasonably interfered with . . . the exercise of his rights protected by the FMLA" and that Sunbelt terminated him "in violation of his rights protected by the FMLA."  Am.

Compl. 4.  These statements were sufficient to put Sunbelt on notice of Kirchner's

pursuit of both interference and retaliation theories of liability under the FMLA.  Indeed,

Sunbelt acknowledged the possibility that Kirchner was asserting an FMLA retaliation

claim in its opening memorandum on the motion for summary judgment.  *See* Def.'s

Mem. of Law in Support of Mot. for Summ. J. 14.

Sunbelt next contends that Kirchner has not established a prima facie case of

FMLA retaliation.  To prevail on an FMLA retaliation claim, an employee must provide

either direct or indirect proof of the retaliation.  *Ridings*, 537 F.3d at 771 (citation

omitted).  Under the direct method, an employee must establish that:  "(1) he engaged

in a protected activity; (2) his employer took adverse employment action against him;

and (3) there is a causal connection between his protected activity and his employer's

adverse employment action."  *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 633 (7th Cir.

2009) (citation omitted).  "Direct evidence is not required under the direct method of

proof; circumstantial evidence that suggests discrimination, albeit through a longer

chain of inferences, is sufficient."  *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 742 (7th Cir.

2008) (citation and internal quotation marks omitted).

Under the indirect method, an employee establishes a prima facie case of

retaliation if he demonstrates that:  "(1) he engaged in statutorily protected activity; (2)

he met his employer's legitimate expectations; (3) he suffered an adverse employment

action; and (4) he was treated less favorably than similarly situated employees who did

not engage in statutorily protected activity."  *Cracco*, 559 F.3d at 634-35 (citation

omitted).  The burden then shifts to the employer to identify a legitimate, non-invidious

13

reason for its actions. *Id.* at 635. If the employer meets its burden, the burden shifts back to the employee to show that the employer's reason is pretextual. *Id.*

Kirchner presents sufficient evidence of retaliation under the direct method of proof. As the Court explained earlier, Kirchner presents circumstantial evidence of a causal connection between his request for medical leave and his termination. *See supra* at 7-8 (describing evidence). Of particular significance is Sunbelt's termination of Kirchner just three days after his injury. *See Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir. 2005) (finding it to be "[o]f major significance . . that only three days had elapsed between [plaintiff's] initial complaint of discrimination and her termination"). Though "suspicious timing, standing alone, will rarely be sufficient . . . to create a triable issue," *Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (citation and internal quotation marks omitted), "suspicious timing may permit a plaintiff to survive summary judgment if there is other evidence that supports the inference of a causal link." *Culver*, 416 F.3d at 546 (citation omitted).[1] In this case, the timing of Sunbelt's termination of Kirchner, coupled with the other circumstantial evidence described earlier, provides sufficient evidence for Kirchner's claim to survive summary judgment.

### c. Remedies

The Court turns finally to Sunbelt's arguments concerning the remedies available for Kirchner's FMLA claims. A plaintiff injured by an employer under the FMLA may recover consequential damages and appropriate equitable relief, as provided in 29

---

[1] The Court does not intend by this to suggest it believes that suspicious timing is *never* sufficient by itself. It is fairly easy to posit a case in which adverse employment actions comes so quickly on the heels of protected conduct to enable a reasonable inference of retaliation without more.

U.S.C. § 2617.  *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 86-87

(2002).  Section 2617 provides, in relevant part:

> Any employer who violates section 2615 of this title shall be liable to any eligible employee affected –
>
> (A) for damages equal to – (i) the amount of – (I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or (II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks of wages or salary for the employee; (ii) the interest on the amount described in clause (i) calculated at the prevailing rate; and (iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii) . . . ; and
>
> (B) for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

29 U.S.C. § 2617(a)(1).

Kirchner requests damages for lost wages, pain and suffering, lost employee benefits, attorney's fees and costs, and "such other and further relief as the Court may consider just and proper."  Am. Compl. 5.  Sunbelt disputes that Kirchner is entitled to damages for pain and suffering, reinstatement, or damages for lost compensation.

The Court begins with Kirchner's entitlement to damages for pain and suffering. "The remedies available under the FMLA do not include damages for emotional distress or punitive damages."  *Breneisen v. Motorola, Inc.*, No. 02 C 50509, 2009 WL 1759575, at *7 (N.D. Ill. June 22, 2009); *see also Alvarez v. Hi-Temp Inc.*, No. 03 C 2610, 2004 WL 603489, at *4 (N.D. Ill. Mar. 24, 2004) (same); *Harrington-Grant v. Loomis, Fargo & Co.*, No. 01 C 6344, 2002 WL 47152, at *6 (N.D. Ill. Jan. 11, 2002) (same).  Moreover, Kirchner has forfeited any claim to the contrary by failing to address his entitlement to

such damages in his filing in response to the motion for summary judgment.  *See Weinstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005); *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008).

The Court next considers whether Kirchner is entitled to reinstatement or damages for lost wages on his FMLA claims.  "[S]ection 2617 provides no relief unless the employee was prejudiced by the violation."  *Ragsdale*, 535 U.S. at 89.  "An employee . . . has no right to reinstatement – and, therefore, damages – if, at the end of his twelve-week period of leave, he is either unable or unwilling to perform the essential functions of his job."  *Franzen v. Ellis Corp.,* 543 F.3d 420, 426 (7th Cir. 2008) (citing 29 C.F.R. § 825.2149(b)) (other citations omitted).  Accordingly, "[n]umerous federal courts have held that an employee's rights under the FMLA were not violated when, although the employee may have been terminated from unpaid leave before the end of the FMLA period, there was no dispute that the employee would not have been able to return or would not have returned to work at the end of the leave period."  *Mendoza v. Micro Electronics, Inc.*, No. 02 C 8005, 2005 WL 331585, at *4-5 (N.D. Ill. Feb. 8, 2005) (collecting cases); *see also Breneisen*, 2009 WL 1759575, at *7; *Biggs v. Littlefuse, Inc.*, No. 03 C 0225, 2006 WL 3626759, at *5-6 (N.D. Ill. Dec. 8, 2006); *Strykowski v. Rush N, Shore Med. Ctr.*, No. 02 C 778, 2003 WL 21788987, at *6-7 (N.D. Ill. July 30, 2003); *Soodman v. Wildman, Harrold, Allen & Dixon*, No. 95 C 3834, 1997 WL 106257, at *8 (N.D. Ill. Feb.10, 1997).

In this case, the evidence establishes that Kirchner was unable to perform the essential functions of his job from the date of his injury, November 12, 2007, until he

was released to full duty on June 4, 2008.  At the very least, he was unable to work

between November 12, 2007, and April 10, 2008, the date upon which he was released

to light duty.  Under either date, Kirchner would not have been able to return to work at

the completion of a twelve-week FMLA leave.  Due to this fact, he is not entitled to

reinstatement or damages for lost wages under section 2617(A)(i)(A).

Kirchner counters argues that he is entitled to reinstatement and damages for

lost wages because Sunbelt never designated his leave as FMLA leave.  The Supreme

Court rejected that argument in *Ragsdale*.  In *Ragsdale*, the Court invalidated a

regulation that prohibited an employer from counting leave not designated as FMLA

leave against the employee's FMLA entitlement.  *See Ragsdale*, 535 U.S. at 89-96.

The Court explained that the regulation impermissibly "alter[ed] the FMLA's cause of

action in a fundamental way:  It relieve[d] employees of the burden of proving any real

impairment of their rights and resulting prejudice."  *Id.*  The Court concluded that the

employee was not entitled to additional FMLA leave due to her employer's failure to

comply with the notice regulation, because she had not shown that she was prejudiced

by the violation:

> Ragsdale has not shown that she would have taken less leave or intermittent
> leave if she had received the required notice . . . . In fact, her physician did not
> clear her to work until December, long after her 30-week leave period had
> ended.  Even if Wolverine had complied with the notice regulations, Ragsdale
> still would have taken the entire 30-week absence.

*Id.*  Likewise, Kirchner cannot show that he was prejudiced by Sunbelt's failure to

provide FMLA leave or to designate any leave as FMLA-qualifying.  He is therefore not

entitled to reinstatement or damages for lost compensation.[2]

**Conclusion**

For the foregoing reasons, the Court grants in part and denies in part Sunbelt's motion for summary judgment [docket no. 289].  The case is set for a status hearing on April 14, 2011 at 9:30 a.m. for the purpose of setting a trial date and discussing the possibility of settlement.

MATTHEW F. KENNELLY
United States District Judge

Date:  April 1, 2011

---

[2] Kirchner may, however, be entitled to damages for lost benefits.  *See* 29 U.S.C. § 2614(c)(1) (stating that employees are generally entitled to group health coverage during FMLA leave periods).  He may also be entitled to "any actual monetary losses sustained . . . as a direct result of the violation."  29 U.S.C. § 2617(a)(1)(A).